UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



KEMAR MCGREGOR SUCCESOR TO
HAMMER MUSIK AND
KINGSTON SONGS
2312 SW 82nd TERRACE
NORTH LAUDERDALE, FL 33068
(863) 399-0107

Plaintiff,

- against –

VP RECORDS
89-05 138th St,
Jamaica, NY 11435
718 425 1100
-and-

6022 SW 21st Steet,
Miramar, FL 33023
954 966 7236
info@vprecords.com

Greensleeves Records Ltd
89-05 138th Street, Jamaica, NY, 11435

Greensleeves Publishing Ltd
89-05 138th Street, Jamaica, NY, 11435

STB MUSIC INC.
89-05 138th St,
Jamaica, NY 11435
718 425 1100

WARNER MUSIC INC
1633 Broadway
New York, NY 10019

Warner Music

: CASE NO:
: COMPLAINT
:
: DEMAND FOR BENCH TRIAL

555 Washington Ave # 300
Miami Beach, FL 33139
(305) 534-1010

ADA Music UK

27 Wrights Lane, Kensington, London W8 5SW, United Kingdom

+44 20 8563 5211

ADA Music

75 Rockefeller Plz

New York, NY 10019-6908

USA +1 212-343-2485 (Phone)

212-343-2504 (Fax)

ADA Music

1290 Avenue of the Americas

New York, New York 10104

Telephone: +1-212-991-5111


Royalty Network Inc.

224 West 30th Street

New York, NY 10001


|                                   | : |
| Defendants.                       | : |
| ----------------------------------x |

# COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff, KEMAR MCGREGOR, for his complaint against Defendant, alleges:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action seeking to put an immediate stop to, and to obtain redress for, Defendants' blatant and purposeful infringement of the copyright in Plaintiff's musical compositions listed in the **Schedule A.**

2. Plaintiff is a hugely successful musical producer with ownership interest in the musical compositions listed in **Schedule A and Schedule B**.

3. The Defendants failed to credit and account on co-owned musical compositions and sound recording masters on **Schedule B.**

4. The Defendants signed recording artist Windell Edwards pka Gyptian while he was under a contractual management and recording agreement with Plaintiff. **See Exhibit 5.**

5. The Defendants continue to claim sole ownership and publishing rights to said compositions to performance societies worldwide without Plaintiff's authorization and despite several requests made to Defendants by Plaintiff to discontinue the alleged infringement.

6. The Defendants continue to claim rights to said compositions worldwide without Plaintiff's authorization and despite several requests made to Defendants by Plaintiff to discontinue the alleged infringement.

7. Defendants continue to collect revenues generated from the previously mentioned infringement.

8. Defendants' conduct is causing, and unless immediately enjoined will continue to cause, enormous and irreparable harm to Plaintiff. Defendants may not continue to exploit Plaintiff's musical compositions without authorization in order to collect profits from the performance revenues of said compositions to the public. Defendants' conduct must

immediately be stopped and Plaintiffs must be compensated for Defendants' willful acts of infringement.

## JURISDICTION AND VENUE

9. This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.).

10. This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (copyright).

11. This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of Florida and in this judicial district, the acts of infringement complained of herein occurred in the State of Florida and in this judicial district, and Defendants have caused injury to Plaintiffs and their intellectual property within the State of Florida and in this judicial district.

12. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

## PARTIES

13. Plaintiff Kemar McGregor is a music producer residing in the State of Florida, with his principal place of business in the State of Florida.

14. Defendant VP Records is an Independent Record Label and entertainment distribution corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State of New York at 89-05 138th Street, Jamaica, NY 11435, and additionally conducts business in the State of Florida at 6022 SW 21st Street, Miramar, FL 33023.

15. Defendant STB Music (part of VP Music Group) is a music publishing corporation organized in New York, with its principal place of business in the State of New York at 89-05 138th Street, Jamaica, NY 11435.

16. Defendant Greensleeves Records Ltd is an Independent Record Label and entertainment distribution corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State of New York at 89-05 138th Street, Jamaica, NY 11435.

17. Defendant Greensleeves Publishing Ltd is a music publishing corporation organized in New York, with its principal place of business in the State of New York at 89-05 138th Street, Jamaica, NY 11435.

18. Defendant Warner Music Inc. is an Independent Record Label and entertainment distribution corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State of New York at 1633 Broadway. New York, NY 10019 and additionally conducts business in the State of Florida at 555 Washington Ave # 300 Miami Beach, FL 33139.

19. Defendant ADA Music is an Independent Record Label and entertainment distribution corporation duly organized and existing under the laws of the State of New York, with its principal place of business in the State of New York at 75 Rockefeller Plz New York, NY 10019-6908 and 1290 Avenue of the Americas New York, New York 10104 additionally conducts business in the 27 Wrights Lane, Kensington, London W8 5SW, United Kingdom.

20. Defendant Royalty Network Inc. is a music publishing corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York at 224 West 30th Street, New York, New York 10001.

## GENERAL ALLEGATIONS

21. Plaintiff McGregor inherits interests in the musical compositions listed in **Schedule B** and owns 100% rights in the musical compositions listed in **Schedule A**. Plaintiff McGregor maintain an ownership interests in the rights and title of the copyrights in the previously mentioned compositions as the author and through Plaintiff's publishing entity Kingston Songs Edition which is also sole owned by Plaintiff McGregor. A true and correct copy of Plaintiff's application for copyright registration is annexed hereto as **Exhibit 1.**

22. On January 1, 2002 Plaintiff McGregor and Ingo Kleinhammer from Hammer Musik entered into a 50/50 licensing and partnership agreement. Under the terms of said Agreement the musical compositions listed in Schedule A and Schedule B were jointly owned by Plaintiff McGregor and Ingo Kleinhammer at 50% each. **"See Exhibit 2 attached"**

23. This 50/50 arrangement was established via two (2) contract agreements ratified by the Plaintiff and Ingo Kleinhammer in 2002.

24. Pursuant to the previously mentioned Agreement Plaintiff McGregor created the publishing company Kingston Songs Edition, which controlled 100% of the jointly owned masters. Said publishing agreement attached to this lawsuit as **"Exhibit 3"**

25. On October 2, 2002, Plaintiff McGregor and Ingo Kleinhammer from Hammer Musik entered into a production agreement between the Plaintiff's production company, No

Doubt Productions, and Kingston Songs/Hammer Musik, resulting in joint ownership of several sound recording masters. This agreement will be referred to hereinafter as "the Hammer Musik Production Agreement." **"See Exhibit 4"**

26. In 2005, recording artist Windel Edwards pka Gyptian entered into a management agreement with the Plaintiff, where the artist Gyptian granted to Kingston Songs 20 percent ownership in all of Gyptian's copyrights created from 2005 to 2010. This 20 percent interest was therefore controlled by Kingston Songs, which was jointly owned by Plaintiff and Ingo Kleinhammer. This agreement will be referred to hereinafter as the 2005 Gyptian Management Agreement. **"See Exhibit 5"**

27. After the 2005 Gyptian Management Agreement was ratified, the Plaintiff entered into several agreements with the Defendants, wherein compositions owned by both McGregor and Ingo Kleinhammer were licensed to the Defendants. **"See Exhibit 6"**

28. In 2006, VP Records, the Plaintiff and Ingo Kleinhammer (Hammer Musik) entered into a three-way licensing and publishing agreement for two albums with artist Gyptian (Windel Edwards). This agreement will be referred to hereinafter as "the 2006 Gyptian Agreement." **"See Exhibit 7"**

29. Per the 2006 Gyptian Agreement, Ingo Kleinhammer (Hammer Musik) and the Plaintiff granted VP Records and their publishing company, STB Music, $1/3^{rd}$ of the publishing on the music and the lyrics.

30. The 2006 Gyptian Agreement contained an inducement letter that was signed by Gyptian (aka Windel Edwards), who signed to acknowledge the terms set forth in the 2006 Gyptian Agreement.

31. Prior to VP Records' purchase of Greensleeves Records in 2008, the Plaintiff entered into a licensing agreements with Greensleeves Records in UK in 2007, in which the Plaintiff licensed to Greensleeves multiple albums and or musical compilations whose publishing and masters are co-owned by the Plaintiff and Ingo Kleinhammer per the Hammer Musik Publishing Agreement and the Hammer Musik Production Agreement. **"See Exhibit 8"**

32. On January 1, 2008, VP Records entered into a recording agreement with Gyptian for multiple albums in violation of the 2006 Gyptian Agreement which prohibited Gyptian from signing overlapping recording agreements. **"See Exhibit 9"**

33. On April 1, 2008, VP Records entered into a publishing agreement with Gyptian in relation to the same copyrights bound by the 2006 Gyptian Agreement along with other titles bound by the 2005 Gyptian Management Agreement. **"See Exhibit 10"**

34. In December of 2008, VP Records filed a lawsuit naming Tad's Records Inc., Tad A. Dawkins, Tad A. Dawkins Jr. and Kemar McGregor as defendants. **"See Exhibit 11"**

35. Plaintiff McGregor was not served with process and was thus denied the opportunity to be heard in said lawsuit.

36. Throughout the lawsuit VP Records alleged copyright infringement of titles owned by Plaintiff McGregor and Ingo Kleinhammer which were not the subject of any previously executed license or recording agreement granting ownership or possessory rights.

37. In January of 2012 and without the knowledge of Plaintiff McGregor, VP Records entered into a settlement agreement with Tad's Records regarding titled never previously licensed or transferred to VP records. **"See Exhibit 12"**

38. In 2009, the Defendants began habitually and incorrectly crediting their own publishing company, STB Music, as the owner of compositions licensed by the Plaintiff to the

Defendant. These said compositions were actually co-owned by the Plaintiff and Kleinhammer, but the Defendants failed to credit these compositions accurately. **"See Exhibit 13"**

39. Also in 2009, VP Records wrongfully changed the percentage splits of multiple titles with ASCAP and PRS performance societies, and removed Hammer Musik/Kingston songs from all splits. VP Records instead listed their company, STB Inc, as the owner, and wrongfully removed Kingston Songs and Hammer Musik from all releases licensed to them and some that were not. **"See Exhibit 14"**

40. The Defendants also wrongfully amended filed copyrights to the sound recording masters, lyrics and productions as "works for hire" wholly owned by their companies, STB Music Inc and VP Records. **"See Exhibit 15"**

41. During a New York proceeding Ingo Kleinhammer, sent a signed, notarized affidavit to the court, stating that Kleinhammer and the Plaintiff only granted VP Records a $1/3^{rd}$ publishing interest in connection with the 2006 Gyptian Agreement, and that he still controlled a substantial interest in connection with the 2006 Gyptian Agreement. "See **Exhibit 16"**

42. Before Ingo Kleinhammer became very ill, and before he passed away, he documented his intent to transfer to the Plaintiff all of his interests in the copyrights at issue. "See **Exhibit 17."**

43. The Judge in that proceeding ruled that VP Records could not purchase from Plaintiff McGregor, rights owned and controlled by Ingo Kleinhammer.

44. In 2014, after Ingo Kleinhammer's death in 2013, GEMA performance society sent an email, addressed to BMI performance society, and copied the Plaintiff, advising BMI that

all of the copyrights in Kingston Songs in Germany have now transferred to the Plaintiff. **"See Exhibit 18"**

45. As a result of the said inheritance, Plaintiff McGregor is now the sole author and owner of the musical compositions and sound recording masters listed in **Schedule A** and the co-owner of the musical compositions and sound recording masters listed in **Schedule B**. Plaintiff McGregor owns the rights and title to the copyrights in the previously mentioned compositions as the author and through the Plaintiff's publishing entity Kingston Songs Edition, which is also solely owned by Plaintiff McGregor. A true and correct copy of Plaintiff's application for copyright registration is annexed hereto as **"Exhibit 19"**.

46. This 2013 inheritance included a substantial stake in an assortment of sound recording masters, musical compositions and copyrights, stemming from a 50/50 partnership arrangement established in 2002, between the Plaintiff and his now-deceased business partner, Ingo Kleinhammer.

47. All the scheduled masters are copyrighted in the United States Library of Congress under the name Kemar McGregor, reflecting whole ownership of said master in Plaintiff McGregor.

48. In 2014, the Defendants began infringing on a large assortment of the Plaintiff's copyrights, in connection with assets inherited by the Plaintiff in 2013.

49. The Defendants are currently infringing on the copyrights listed in the Schedule A, despite numerous attempts on the part of the Plaintiff requesting the Defendant to cease and desist all said infringements via e-mail over a twelve-month period.

50. The Defendants have continued to infringe on the Plaintiff's copyrights, even after the Plaintiff's attorney, sent them several notices. In January and February, 2016, the

Copyright Registration issued by the Register of Copyrights (the "Copyrighted Recordings"), and/or each of which is the subject of a valid recording/publishing agreement attached to this lawsuit.

59. Among the rights granted to Plaintiff under the Copyright Act are the rights to reproduce the Copyrighted Recordings and to distribute the Copyrighted Recordings to the public and to derive revenue from said distribution.

60. Through their conduct averred herein, Defendants have infringed Plaintiffs' copyright in the Infringed Composition in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

61. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiffs' rights.

62. As a result of Defendant's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant's infringement of each of the Copyrighted Recordings. Plaintiffs further are entitled to their attorneys' fees and costs pursuant to 17 U.S.C. § 505.

63. Plaintiffs are also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

64. As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believe and on that basis aver that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Infringed Compositions. Plaintiff is entitled to

preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT II
## ACOUNTING AND CREDIT
### (By Plaintiff against Defendants)

65. The Defendants failed to credit and account on co-owned musical compositions and sound recording masters on **Schedule B.**

66. The Defendants have continued to claim one hundred percent (100%) ownership in the copyrights. The Defendants continued to remove Hammer Musik from the PRS database in the UK, and listed their own company, STB Music Inc, as the sole owner of publishing rights to the compositions and sound recording masters on **Schedule B**.

67. Defendants are currently collecting revenues in connection with sound recordings and compositions co- owned by the Plaintiff despite numerous demands and/or requests by Plaintiff requesting the Defendants to cease.

68. Defendants conduct is causing, and unless immediately enjoined will continue to cause, enormous and irreparable harm to Plaintiff. Defendants may not continue to exploit Plaintiff's musical compositions without crediting Plaintiff correctly and accounting to Plaintiff. Defendants must immediately be stopped and Plaintiffs must be compensated for Defendants' willful acts of not crediting and accounting to Plaintiff.

## COUNT III

## CONTRACTUAL INTERFERANCE
### (By Plaintiff against Defendants)

69. The Defendants signed recording artist Windell Edwards pka Gyptian while he was under a contractual management and recording agreement with Plaintiff.

70. In 2005, recording artist Windel Edwards pka Gyptian entered into a management agreement with the Plaintiff, where the artist Gyptian (Windel Edwards), granted to Kingston Songs 20 percent ownership in all of Gyptian's (Windel Edwards), copyrights created from 2005 to 2010. This 20 percent interest was therefore controlled by Kingston Songs, which was jointly owned by Plaintiff and Ingo Kleinhammer.

71. In 2006, VP Records, the Plaintiff and Ingo Kleinhammer (Hammer Musik) entered into a three-way licensing and publishing agreement for two albums with artist Gyptian (Windel Edwards).

72. Per the 2006 Gyptian (Windel Edwards), Agreement, Ingo Kleinhammer (Hammer Musik) and the Plaintiff granted VP Records and their publishing company, STB Music, 1/3rd of the publishing on the music and the lyrics. The 2006 Gyptian (Windel Edwards), Agreement contained an inducement letter that was signed by Gyptian (Windel Edwards), who signed to acknowledge the terms set forth in the 2006 Gyptian (Windel Edwards), Agreement.

73. On January 1, 2008, VP Records entered into a recording agreement with Gyptian for multiple albums in violation of the 2005 Gyptian (Windell Edwards) and 2006 Gyptian (Windell Edwards) Agreement which prohibited Gyptian (Windell Edwards) from signing overlapping recording agreements.

74. On April 1, 2008, VP Records entered into a publishing agreement with Gyptian (Windell Edwards) in relation to the same copyrights bound by the 2006 Gyptian (Windell Edwards) Agreement along with other titles bound by the 2005 Gyptian (Windell Edwards) Management Agreement.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

75. For an accounting of, and the imposition of constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiffs' copyright in the Infringed Composition.

76. For a preliminary and permanent injunction prohibiting Defendants, and their respective agents, servants, employees, officers, successors, licensees and assigns, and all persons acting in concert or participation with each or any of them, from continuing to infringe Plaintiffs' copyright in the Infringed Composition. Furthermore providing:

77. "Defendants shall be and hereby is enjoined from directly or indirectly infringing Plaintiff's rights under federal or state law in the Copyrighted Recordings and any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiff ("Plaintiff's Recordings"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiff's Recordings, to distribute (i.e., upload) any of Plaintiff's Recordings, or to make any of Plaintiff's Recordings available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendants also shall destroy all copies

of Plaintiff's Recordings that Defendants have downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendants' possession, custody, or control."

78. For statutory damages for each infringement of each Copyrighted Recording pursuant to 17 U.S.C. § 504.

79. For Plaintiff's attorneys' fees, costs and disbursements in this action.

80. For prejudgment interest according to law.

81. For such other and further relief as the Court may deem just and proper.

By: _____
Kemar McGregor, Plaintiff

### DEMAND FOR BENCH TRIAL

Plaintiffs demand a bench trial.

Date: January 30, 2017

**KEMAR MCGREGOR**

By: _____

                **Plaintiff**