# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-60231-BLOOM/VALLE

KEMAR MCGREGOR,

      Plaintiff,

v.

VP RECORDS, *et al.*,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants, VP Records, Greensleeves Records Ltd., STB Music, Inc., Greensleeves Publishing Ltd., ADA Music, and Warner Music, Inc. (collectively "Defendants") Joint Motion to Transfer and to Dismiss Plaintiff's Complaint, ECF No. [38] (the "Motion"). The Court has carefully reviewed the Motion, the parties' briefs, the applicable law and is otherwise fully advised. For the reasons that follow, the Motion is granted.

### I. BACKGROUND

Plaintiff, Kemar McGregor ("Plaintiff"), is a musical producer who alleges he has an ownership interest in hundreds of musical compositions listed in the Schedules A and B, attached to his Complaint. *See* ECF No. [1] at 1. Defendants VP Records, STB Music, Greensleeves Records, Ltd., Greensleeves Publishing Ltd., Warner Music Inc., ADA Music, and Royalty Network, Inc. are independent record labels, entertainment distribution corporations, or music publishing corporations alleged to be organized under the laws of New York with their principal place of business in New York. *Id.* at 4-6. As to the musical compositions identified in Schedule A, Plaintiff alleges that he maintains an ownership interest in the rights and title to the copyrights as the author and sole owner of Kingston Song Edition, a publishing entity. *Id.* at 6.

As to the musical compositions identified in Schedule B, Plaintiff alleges that he inherited the interest and rights in those compositions. *Id.* at 6.

Plaintiff alleges that, in 2005, he signed a management contract and recording agreement with artist Windell Edwards a/k/a Gyptian ("Gyptian") whereby Gyptian granted 20 percent ownership in all of his copyrights created from 2005 to 2010 to Kingston Songs ("2005 contract"). *Id.* at 7. After this contract was executed, Plaintiff entered into several licensing agreements with Defendants involving compositions owned by Plaintiff and his former partner, Ingo Kleinhammer, now deceased,. *Id.* In 2006, VP Records, Plaintiff and Mr. Kleinhammer entered into a three-way licensing and publishing agreement for two albums with artist Gyptian ("2006 contract"). *Id.* Thereafter, in 2008, Gyptian and VP records signed a recording agreement for the creation of several albums, despite a clause in the 2006 contract prohibiting Gyptian from signing overlapping recording agreements, and another publishing agreement with VP Records involving the same copyrights bound by the 2005 and 2006 contracts. *Id.* at 8.

According to Plaintiff, Defendants[1] continue to claim sole ownership and publishing rights to the compositions identified in the Complaint without Plaintiff's authorization and despite Plaintiff's repeated requests to discontinue the alleged infringement. *Id.* at 1, 10. More specifically, Plaintiff alleges that in 2014, Defendants began infringing on a large assortment of his copyrights in connection with those compositions he inherited in 2013 when Mr. Kleinhammer passed away. *Id.* at 10. Further, Defendants continue to collect revenue in connection with sound recordings and compositions that Plaintiff solely owns despite his demands to cease collecting such revenue. *Id.* at 11. Plaintiff also alleges that ADA Music and

---

[1] Plaintiff refers to all Defendants collectively throughout the Complaint without distinguishing their individual actions.

Warner Music are infringing upon Plaintiff's rights and collecting revenue relating to certain music videos on YouTube that he wholly owns.[2]  *Id.* at 11.

Count I of the Complaint alleges claims against all Defendants for copyright infringement in violation of 17 U.S.C. §§ 106 and 501.  *Id.* at 12-14.  In Count II, Plaintiff seeks an accounting from Defendants for allegedly failing to credit and account on co-owned musical compositions and sound recordings identified on Schedule B.  *Id.* at 14.  In the last count, Count III, Plaintiff sues all Defendants for contractual interference as it relates to Plaintiff's 2005 contract with artist Gyptian.  *Id.* at 15.  Throughout the Complaint, Plaintiff also seeks injunctive relief against the Defendants, preventing them from exploiting his musical compositions without his authorization and from collecting profits from performance revenues.  *Id.* at 1, 11, 12, 16.

In the Motion, Defendants seek to transfer this case to the District Court for the Eastern District of New York or, alternatively, to dismiss the Complaint for failure to state a claim.  *See* ECF No. [38].  Specifically, Defendants seek to enforce a forum-selection clause contained within a Release and Settlement Agreement ("Settlement Agreement") signed by several of the Defendants and Plaintiff in a prior lawsuit captioned *VP Music Group, Inc., et. al. v. Kemar McGregor, et. al.*, Case No. 1:11-cv-02619-JBW-MDG, litigated in the Eastern District of New York ("the New York lawsuit").  *Id.*  Defendants argue that Plaintiff's claims here arise in connection with or are related to the matters resolved in the Settlement Agreement, requiring the transfer of this lawsuit to that venue pursuant to the mandatory language of the forum-selection clause.  *Id.*  Alternatively, Defendants seek to dismiss the Complaint for failure to state a claim.

---

[2] Plaintiff also alleges that Royalty Network entered into a publishing agreement with Plaintiff in 2008, which has since expired, and that it failed to provide him an accounting as required by the agreement. *Id.* at 11-12. Although Plaintiff sent Royalty Network a termination notice in 2011, seeking to discontinue the agreement, Plaintiff alleges that Royalty Network declined to terminate it and continued to infringe upon Plaintiff's copyrights. *Id.* The Court will not explore Plaintiff's claims against Royalty Network any further as it is not a moving party. Thus, Plaintiff's claims against Royalty Network are not relevant for purposes of resolving the Motion.

*Id.* Plaintiff's Response in opposition and Defendants' Reply timely followed. *See* ECF Nos. [47] and [48]. Concurrent with their Motion, Defendants also filed a Request for Judicial Notice in support of the Motion to Transfer and/or Dismiss, asking the Court to take judicial notice of the docket and a stipulation filed in the New York lawsuit. *See* ECF No. [39]. Although the Court required that Plaintiff provide a response to this Motion by May 5, 2017, *see* ECF No. [43], Plaintiff has not responded or otherwise objected to this request.[3]

## II.  LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens." Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.,* 134 S. Ct. 568, 580 (2013). As the Supreme Court explained, 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system.... For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* has continuing application." *Id.* Generally, "[t]o obtain dismissal for *forum non conveniens,* 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1310–11 (11th Cir. 2001)). In addition, the Supreme Court has held that the existence of a forum-selection clause is essentially case-dispositive of the section 1404(a) or *forum non conveniens* analysis. *See Atlantic Marine,* 134 S. Ct. at 581; *see also GDG Acquisitions,* 749 F.3d at 1028 ("an enforceable forum-selection clause

---

[3] The Court finds it appropriate to take judicial notice of the docket and filings in the New York lawsuit. Public records, such as those presented here, can be the subject of judicial notice. *See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).

carries near-determinative weight" in the *forum non conveniens* analysis). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine,* 134 S. Ct. at 581.

This determination stems, in part, from the recognition that a valid forum-selection clause represents the parties' *ab initio* agreement as to the most proper forum. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 31 (1988); *Atlantic Marine,* 134 S. Ct. at 581–82 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 16–17 (1972) ("[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable."). Ordinarily, while the "burden of demonstrating that an appropriate alternative forum exists is not a heavy one," it does lie squarely "with the party seeking dismissal." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F. Supp. 2d 1271, 1276 (S.D. Fla. 2001). Once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden to the non-movant to establish that dismissal is improper. *See Espie v. Washington Nat. Ins. Co.,* No. 2:14cv6-MHT, 2014 WL 2921022, at *10 (M.D. Ala. June 27, 2014). Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" that the clause should be set aside. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

In considering a motion to dismiss for *forum non conveniens,* as with a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), a court must accept the facts in a plaintiff's complaint as true. *See, e.g., Matuszevoska v. Princess Cruise Lines, Ltd.,* No. 06-21975-CIV, 2007 WL 7728281, at *2 (S.D. Fla. Feb. 12, 2007). A court may "consider matters outside the pleadings if presented in proper form by the parties" in ruling on a motion to dismiss for *forum non conveniens. MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.,* 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001); *see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC,* 534 F. App'x 826, 829–30 (11th Cir. 2013) (affidavit in support of motion to dismiss for *forum non conveniens* properly considered); *Webb v. Ginn Fin. Servs.,* 500 F. App'x 851, 854 (11th Cir. 2012) (consideration of evidence outside the pleadings was appropriate on Rule 12(b)(3) motion). However, "[w]here conflicts exist between allegations in the complaint and evidence outside the pleadings, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Malik v. Hood,* No. 11-81090-CIV, 2012 WL 1906306, at *1 (S.D. Fla. May 25, 2012); *see also Belik v. Carlson Travel Grp., Inc.,* 26 F. Supp. 3d 1258, 1263 (S.D. Fla. 2012) (considering motion to dismiss for *forum non conveniens,* court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff").

While the *Atlantic Marine* analysis presupposes a valid forum-selection clause, "forum-selection clauses are presumptively valid and enforceable [absent] a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines,* 499 U.S. at 593–95); *see also Bremen,* 407 U.S. at 10 (forum-selection clauses prima facie valid and enforceable as a matter of federal law). "A forum-selection clause can only be invalidated on a showing of a 'bad faith motive' where the forum was chosen 'as a means of discouraging

[parties] from pursuing legitimate claims.'" *Segal v. Amazon.com, Inc.,* 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (quoting *Carnival Cruise Lines,* 499 U.S. at 595). Furthermore, "a forum selection clause operates as a separate contract that is severable from the agreement in which it is contained and is enforceable, as long as the forum selection clause itself was not included in the contract because of fraud." *Sachs v. Bankers Life & Cas. Co.,* No. 11-81344-CIV, 2012 WL 1900033, at *2 (S.D. Fla. May 24, 2012) (citing *Rucker v. Oasis Legal Finance LLC,* 632 F.3d 1231 (11th Cir. 2011) ("A forum selection clause is viewed as a separate contract that is severable from the agreement in which it is contained.")). That is, a forum selection clause is unenforceable only if "the inclusion of that clause in the contract was the product of fraud or coercion." *Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1296 (11th Cir. 1998). "Choice clauses will be found unreasonable under the circumstances and thus unenforceable only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon,* 148 F.3d at 1296 (citing *Carnival Cruise Lines,* 499 U.S. at 594–95; *Bremen,* 407 U.S. at 15–18).

Beyond validity, in analyzing the application of a forum-selection clause, a court must determine whether the claim or relationship at issue falls within the scope of the clause—by looking to the language of the clause itself—and whether the clause is mandatory or permissive. *See Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Fla. Polk Cty. v. Prison Health Servs. Inc.,* 170 F.3d 1081, 1083 (11th Cir.1999) (court must further determine whether clause is mandatory or permissive).

## III.    DISCUSSION

Here, Defendants seek to enforce the forum-selection clause contained within the Settlement Agreement, which resolved the Parties' claims in the New York lawsuit, and ask the Court transfer this action to the Eastern District of New York.  The forum-selection clause provides as follows:

> 15. Interpretation of Agreement.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to its principles of conflicts of law.  The United States District Court for the Eastern District of New York shall retain exclusive jurisdiction over the parties for purposes of resolving any disputes arising in connection with or relating to this Agreement, and the Parties each agree to submit to the jurisdiction of the United States District Court for the Eastern District of New York in connection with all such disputes and to submit such disputes to Magistrate Judge Marilyn D. Go of that Court.

ECF No. [38-3] at 16.  To resolve the Motion, the Court must first consider whether the forum-selection clause is valid, and if so, whether the claims at issue in this lawsuit fall within its scope, requiring the requested transfer.

### a.   Validity of the Forum-Selection Clause

In his Response, Plaintiff has failed to challenge, let alone present a strong showing, that the forum-selection clause is itself invalid.  Indeed, Plaintiff's Response does not allege that the forum-selection clause was the product of fraudulent inducement or improperly included in the Settlement Agreement to deprive him of some right or ability.  A review of the Settlement Agreement reveals that Plaintiff signed it, initialed every page, and was represented by counsel when negotiating its terms and drafting and executing it.  *See* ECF No. [38-3].  In fact, the Settlement Agreement contains the following language: "Each Party states that he and it has been adequately represented by counsel of his and its own choice in matters relating to this Agreement and negotiations leading up to this Settlement Agreement, and by his and its signature below

8

certifies that he and it have read this Agreement in its entirety with his and its counsel and had the benefit of the advice of counsel with respect to all terms and conditions contained herein." *Id.* at 17. Plaintiff does not dispute the existence of the Settlement Agreement, its authenticity, or the authenticity of his initials and signature. The forum-selection clause is, therefore, valid. Plaintiff has failed to present extraordinary circumstances preventing its application. Finding the forum-selection clause to be valid, the Court next determines whether the claims within the Complaint are subject to its terms.

### b. Scope of the Forum Selection Clause

In analyzing the application of a forum-selection clause, a court must determine whether the claim or relationship at issue falls within the scope of the clause—by looking to the language of the clause itself. *See Bahamas Sales Assoc., LLC v. Byers,* 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."). As part of this analysis, a court must first determine whether the clause is mandatory or permissive. *Fla. Polk County v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n. 24 (11th Cir. 1999)). The clause here provides: "The United States District Court for the Eastern District of New York *shall retain exclusive* jurisdiction over the parties for purposes of resolving any disputes arising in connection with or relating to this Agreement." ECF No. [38-3] at 16 (emphasis added). The use of the words "shall" and "exclusive" both evidence the Parties' intention to create a mandatory, rather than a permissive, forum-selection clause. Having concluded that the forum-

selection clause is mandatory, the Court next determines whether Plaintiff's claims in the Complaint fall within its scope.

To answer this question, the Court must analyze the language of the clause itself. *See Bahamas Sales Assoc.,* 701 F.3d at 1340; *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (regarding forum-selection clause, "the plain meaning of a contract's language governs its interpretation"). The forum-selection language at issue requires that "any disputes *arising in connection with or relating to* this Agreement" must be litigated in the Eastern District of New York. ECF No. [38-3] at 16 (emphasis added). The focus of the analysis, therefore, centers on the meaning of the words "arising in connection with" and "relating to" and their application to the issues raised in the Complaint.

Where a clause refers to claims or actions "arising under or in connection with" the contract, the clause is taken to include "all causes of action arising *directly or indirectly* from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (emphasis added) (holding that clause in question encompassed both contract and tort claims); *see also Vernon v. Stabach*, No. 13-62378-CIV, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("[W]here the contracts at issue contain a broad forum-selection clause applying to 'any suit arising out of or in connection with' an agreement, federal courts have had no trouble finding statutory and tort claims arising directly or indirectly from the relationship evidenced by the contract to fall within the scope of the clause."). On the other hand, a claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). However, a but-for relationship between the claims and the contract at issue, while indicative, does not necessarily mean the claims "relate to" the contract.

*Bahamas Sales*, 701 F.3d at 1341. "The Eleventh Circuit has indicated that a claim is more likely to be 'related to' a contract when that contract is 'the central document in the parties' relationship.'" *Espie*, 2014 WL 2921022 at *6 (quoting *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008)).

In this case, the Court answers the operative question - whether the forum-selection clause in the Settlement Agreement encompasses the claims asserted by Plaintiff in this lawsuit – in the affirmative.[4] The Court first notes that Plaintiff focuses the vast majority of his argument on whether this Court has personal jurisdiction over the Defendants and whether venue is proper in the Southern District of Florida. *See* ECF No. [47] at 3-5. In their Motion, however, Defendants do not challenge personal jurisdiction in Florida[5] or whether venue can be established in this forum absent the forum-selection clause. Instead, Defendants assert that the claims pled in the Complaint arise "in connection with" the dispute previously resolved by the Settlement Agreement. *See* ECF No. [48] at 2. The Eleventh Circuit has interpreted such language to include "causes of action arising *directly or indirectly* from the business relationship evidenced by the contract," encompassing both tort and contract claims. *Stewart Org.*, 810 F.2d at 1070 (emphasis added).

Analyzing the claims resolved by the Settlement Agreement and comparing them to the claims pled in the Complaint, the Court finds there is an overwhelming overlap between the two. Six of the agreements referenced and attached to the Complaint are incorporated into and amended by the Settlement Agreement. Of the 235 songs listed in Schedule A to the Complaint,

[4] Given the Court's conclusion that there is a valid, enforceable, and mandatory forum-selection clause and that Plaintiff's claims fall within its scope, the Court finds that transfer of this lawsuit to the Eastern District of New York is required. The Court, therefore, declines to determine whether the Complaint states a claim under Rule 12(b)(6). It would be more appropriate for the presiding judge in the Eastern District of New York to decide substantive issues once the transfer is completed.
[5] Defendant Royalty Network, which is not a moving party in the subject Motion, has challenged personal jurisdiction in Florida. As explained below, this Court's finding that this matter should be transferred to the Eastern District of New York moots Royalty Network's request for dismissal on the basis of personal jurisdiction.

208 of them appear in the exhibits attached to the Settlement Agreement. As to Schedule B of the Complaint, listing 522 songs, 180 of them appear in the exhibits of the Settlement Agreement while 340 of them are songs relating to artist Gyptian, which is further discussed below. Of these 522 songs, only two songs were not the subject of the New York lawsuit. With regard to artist Gyptian, Plaintiff raises claims of contractual interference in Count III, even though there is an entire section of the Settlement Agreement devoted to resolving the dispute surrounding this artist. *See* ECF No. [38-3] at 12-13. Although Plaintiff generally argues that "[t]he disputes in the present case involve many songs that were never related to or part of" the New York lawsuit, referring to the list of songs owned by Hammer Musik, a side-by-side comparison of the songs listed in Schedules A and B to those attached to the Settlement Agreement completely belies this contention. This is not a situation where the Settlement Agreement overlaps in some peripheral manner with the claims pled in the Complaint. The vast majority of the claims raised in this lawsuit are referenced, mentioned, or resolved in some manner by the Settlement Agreement.

Plaintiff also argues that not all Defendants in this action were parties to the New York lawsuit and Settlement Agreement. While it appears that the Warner Defendants were not part of the Settlement Agreement, the Complaint alleges that they engaged in copyright infringement when exploiting and collecting revenue relating to certain music videos on YouTube that Plaintiff wholly owns. *See* ECF No. [1] at 11. The Settlement Agreement expressly discusses and resolves the dispute involving many of the same YouTube videos. Indeed, the Court's review of the exhibits to the Complaint reveals that 10 of the 14 YouTube videos referenced in the Complaint are specifically discussed in the Settlement Agreement. *Compare* ECF No. [1-7] at 56 *with* ECF No. [38-10] at 2. In fact, Plaintiff's exhibits to the Complaint acknowledge that the YouTube videos formed part of the Settlement Agreement. *See* ECF No. [1-7] at 1 ("These

videos was [sic] apart of the 2014 settlement agreement between VP Records and myself. [sic] Where VP Records agreed to relinquish all claims to the videos."). Even though the Warner Defendants were not named in the Settlement Agreement, they are so closely related to it as the parties allegedly infringing upon Plaintiff's copyrights in the videos. As such, it would be foreseeable for them to be bound by its terms. *See Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th Cir. 1998) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.").

While it is also true that Royalty Network is not a party to the Settlement Agreement, the Court finds this, standing alone, does not warrant a disregard of the forum-selection clause. First, the Court notes that Plaintiff's claims in Counts I, II, and III make no distinction between Royalty Network and any other Defendants. *See* ECF No. [1]. Plaintiff's claims against all Defendants are inextricably intertwined within the pleadings. Second, using a *forum non conveniens* analysis, the Court finds that transfer of this case to the Eastern District of New York is appropriate. Generally, "[t]o obtain dismissal for *forum non conveniens,* 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC,* 749 F.3d at 1028 (quoting *Leon,* 251 F.3d at 1310–11. Here, there is an adequate alternative forum – the Eastern District of New York. Plaintiff has already stipulated to mandatory jurisdiction over all disputes involving the Settlement Agreement in that forum. All moving Defendants have also stipulated to personal jurisdiction in the state of New York by virtue of their request for the transfer as well as the application of the forum-selection clause. *See* ECF No. [48] at 6 (stipulating that "all of

the Defendants served in this case are located in New York and subject to suit in New York").

Although Royalty Network is not a moving party, it has also represented to this Court in its

Motion to Dismiss that it is subject to personal jurisdiction in New York. *See* ECF No. [30] at 8;

[30-5] (The Royalty Network "is a corporation incorporated within the State of New York

having its principal place of business at 224 W. 30th Street, New York, NY 1001.").  As a result,

the Eastern District of New York provides an adequate alternative forum for the litigation of

Plaintiff's claims.  As to public and private interests, the Court finds the requested transfer would

advance both. The Eastern District of New York has already expended a significant amount of

judicial resources presiding over the same issues raised in this lawsuit and it has retained

jurisdiction over the Settlement Agreement.  As to the last factor, the Court finds there is no

undue prejudice or inconvenience to Plaintiff because he expressly agreed to the Eastern District

of New York in the forum-selection clause.  Given the mandatory nature of the forum-selection

clause and the application of the *forum non conveniens* factors, the Court finds it appropriate to

transfer this action to the Eastern District of New York.

IV.    **CONCLUSION**

For the reasons stated herein, it is **ORDERED AND ADJUDGED:**

1.  Defendants' Motion to Transfer, **ECF No. [38]**, is **GRANTED**.  The Clerk is **DIRECTED** to **TRANSFER** this case to the District Court for the Eastern District of New York.  Upon transfer, the Clerk shall **CLOSE** this case.

2.  Defendants' Request for Judicial Notice in support of the Motion to Transfer and/or Dismiss, **ECF No. [39]**, is **GRANTED**.

3.  Defendant Royalty Network, Inc.'s Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Failure to State a Claim, **ECF No. [30]**, is **DENIED** as moot.

4.  Any other pending motions are **DENIED** as moot.  Any pending deadlines are **TERMINATED**.

**DONE AND ORDERED** in Miami, Florida, this 29th day of June, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record